Approved: _____
Adam Sowlati
Assistant United States Attorney

Before: THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

**23 MAG 3400**

---

UNITED STATES OF AMERICA

v.

NIRVANI SABESS,

                Defendant.

---

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1028A, 1343, and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JEREMY ROSENMAN, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York ("SDNY"), and charges as follows:

### COUNT ONE
### (Wire Fraud)

       1.     From at least in or about August 2019 up to and including in or about April 2023, in the Southern District of New York and elsewhere, NIRVANI SABESS, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SABESS fraudulently diverted and attempted to divert hundreds of thousands of dollars of funds belonging to a company (the "Company") at which she is employed to her own bank account.

       (Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
### (Aggravated Identity Theft)

       2.     From at least in or about August 2019 up to and including in or about April 2023, in the Southern District of New York and elsewhere, NIRVANI SABESS, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SABESS used the names of former employees of the Company

on fake and fraudulent documents she created during and in relation to the wire fraud violation charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.  I am a Special Agent with SDNY. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my examination of various reports and records, and on my conversations with others. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview

4.  I am involved in an investigation of a fraudulent scheme perpetrated on the Company by NIRVANI SABESS, the defendant, who, until her recent suspension, worked as Director of People and Culture for the Company—essentially the Company's human resources department. As explained further below, SABESS used her position as Director of People and Culture to change the direct deposit information of several of the Company's former employees ("Former Employee-1," "Former Employee-2," and "Former Employee-3" and, collectively, the "Former Employees"). SABESS then directed biweekly payroll payments for the Former Employees to her own bank account even though the Former Employees were no longer salaried employees. In addition, SABESS used her position as Director of People and Culture to increase her bonus above what was authorized by management.

5.  Based on information provided by and interviews of employees at the Company, I have learned that:

a.  The Company maintains its corporate headquarters in Manhattan, New York.

b.  NIRVANI SABESS, the defendant, worked as the Director of People and Culture for the Company from in or about September 2018 until in or about April 17, 2023, when the Company suspended SABESS's employment without pay. From in or about the beginning of the Covid-19 pandemic through the time of her suspension, SABESS primarily worked remotely at her home address in New Jersey.

c.  The Company manages employee payroll through a third-party company (the "Payroll Company") that provides businesses with an online payroll management system (the "Payroll System"). Each employee at the Company has his or her own Payroll System account, which can be used to take a number of actions, including obtaining paystubs, updating tax elections, and submitting and changing direct deposit information. Given her role as Director of People and Culture, SABESS would have had the ability to obtain administrative privileges over the Payroll System accounts of each of the Company's current and former employees, allowing her to, for example, reset their account credentials (*e.g.*, passwords, security questions) and directly edit their direct deposit information.

## SABESS's Scheme to Divert Payroll Payments

*Former Employee-1*

6. Based on my interview of an employee of the Company, I know that Former Employee-1 was on unpaid leave from her position at the Company from in or about September 2019 through in or about March 2020.

7. From my review of records from the Payroll System, I know that:

a. On or about August 27, 2019, a Payroll System account with the username "NSabess" updated Former Employee-1's Payroll System account information, changing the bank account to which direct deposits were made to a bank account ending in 9949, which I know, from my review of bank account records, belongs to NIRVANI SABESS, the defendant (the "SABESS Bank Account").

b. On or about March 24, 2020, around when Former Employee-1 returned from leave, NSabess reverted the direct deposit bank account from the SABESS Bank Account to the previous bank account on file.

8. From my review of information provided by the Company and bank records, I know that, from in or about August 2019 through in or about February 2020, *i.e.*, during Former Employee-1's unpaid leave, the Company made approximately $59,258.50 payroll payments ostensibly for Former Employee-1, which, after tax and other withholdings, was paid to the SABESS Bank Account.

9. From my review of information provided by the Company and an interview of an employee of the Company, I know that, on or about February 4, 2022, Former Employee-1 resigned as a salaried employee of the Company.[1]

10. From my review of records from the Payroll System, I know that, on or about March 9, 2022, someone purporting to be Former Employee-1 signed a "Direct Deposit Authorization and Agreement" ("Agreeement-1").

11. From my interview of Former Employee-1, I know that:

a. The social security number and home address listed in Agreement-1 were the social security number and home address of Former Employee-1.

b. Former Employee-1 did not, however, sign Agreement-1.

---

[1] Although Former Employee-1 resigned from the Company, she continued to do work for the Company as an independent contractor. She was not paid for this work through the Payroll System.

12. From my review of records from the Payroll System, I know that, on or about March 9, 2022, NSabess updated Former Employee-1's Payroll System account, removing Former Employee-1's email address and resetting Former Employee-1's security questions and password. From my review of records from the Payroll System records and publicly available IP lookup tools, I know that the update was made from an IP address based in New Jersey.

13. From my review of records from the Payroll System, I know that, on or about March 9, 2022, someone using Former Employee-1's Payroll System account changed the bank account to which direct deposits were made to the SABESS Bank Account. From my review of records from the Payroll System and publicly available IP lookup tools, I know that the change was made from an IP address based in New Jersey.

14. From my interview of a subordinate (the "Subordinate") of NIRVANI SABESS, the defendant, and review of messages between SABESS and the Subordinate, I know that SABESS then directed the Subordinate to make payroll payments to Former Employee-1. The Subordinate did not know that the funds would be deposited in the SABESS Bank Account.

15. From my review of information provided by the Company and bank records, I know that, from in or about March 2022 through in or about April 2023, the Company made approximately $143,725.33 in payroll payments ostensibly for Former Employee-1, which, after tax and other withholdings, was paid into the SABESS Bank Account.

16. From my interview of Former Employee-1, I know that, at no time, did Former Employee-1 authorize payroll payments to the SABESS Bank Account.

*Former Employee-2*

17. From my review of information provided by the Company, I know that, on or about September 27, 2019, Former Employee-2 was terminated as a salaried employee of the Company.

18. From my review of records from the Payroll System, I know that, on or about June 30, 2020, NSabess updated Former Employee-2's Pay Payroll System account information, changing the bank account to which direct deposits were made to the SABESS Bank Account. From my review of records from the Payroll System and publicly available IP lookup tools, I know that the change was made from an IP address based in New Jersey.

19. From my review of information provided by the Company and bank records, I know that, from in or about July 2020 through in or about December 2021, the Company made approximately $152,736.96 in payroll payments ostensibly for Former Employee-2, which, after tax and other withholdings, was paid to the SABESS Bank Account.

20. From my interview of Employee-2, I know that Employee-2 was unaware of the payments to the SABESS Account.

*Former Employee-3*

21. From my review of information provided by the Company, I know that, on or about August 5, 2022, Former Employee-3 was terminated as a salaried employee of the Company.

22. From my review of records from the Payroll System, I know that, on or about January 11, 2023, someone purporting to be Former Employee-3 signed a "Direct Deposit Authorization and Agreement" ("Agreeement-2"). No bank account was listed.

23. From my interview of Former Employee-3, I know that:

  a. The social security number listed in Agreement-2 is the social security number of Former Employee-3. The address listed was that of a previous address for Former Employee-3.

  b. Former Employee-3 did not, however, sign Agreement-2.

24. From my review of records from the Payroll System, I know that, on or about January 11, 2023, NSabess updated Former Employee-3's Payroll System account, resetting his security questions and password. From my review of records from the Payroll System and publicly available IP lookup tools, I know that the update was made from an IP address based in New Jersey. From my review of records from the Payroll System and Comcast, an Internet service provider, I know that the update was made by the IP address associated with the Comcast account of NIRVANI SABESS, the defendant.

25. From my review of records from the Payroll System, I know that, on or about January 11, 2023, someone using Former Employee-3's Payroll System account changed the bank account to which direct deposits were made to the SABESS Bank Account. From my review of records from the Payroll System and Comcast, I know that the update was made by the IP address associated with the Comcast account of NIRVANI SABESS, the defendant.

26. From information and documents provided by the Company, I have learned that:

  a. On or about January 13, 2023, *i.e.*, two days after NSabess changed the information on the Former Employee-3's Payroll System account, the Company issued a $2,100 reimbursement payment that was meant for Former Employee-3, but was deposited into the SABESS Bank Account.

  b. Around this time, NIRVANI SABESS, the defendant, directed the Subordinate to issue a check for approximately the same amount to Former Employee-3.

27. From my review of documents provided by the Company, I know that, on or about January 13, 2023, the Subordinate made a written request for a $2,100 check to be issued to Former Employee-3. I believe NIRVANI SABESS, the defendant, directed the Subordinate to issue this check so that Former Employee-3, and consequently the Company, would not discover the changes to the Former Employee-3 Payroll System account.

28. From my review of records from the Payroll System, I know that:

  a. On or about January 13, 2023, *i.e.*, the same day the Company issued the severance payment, NSabess updated Former Employee-3's Payroll System account information, reverting the bank account to which direct deposits were made from the SABESS Bank Account to the original bank account.

b.      On or about January 24, 2023, NSabess, updated Former Employee-3's Payroll System account information, changing the bank account to which direct deposits were made back to the SABESS Bank Account.

29.     From my review of records from the Payroll System and Comcast, I know that the changes to Former Employee-3's Payroll System account described in Paragraph 28 were made by the IP address associated with the Comcast account of NIRVANI SABESS, the defendant.

30.     From my review of information provided by the Company and bank records, I know that, from in or about January 2023 through in or about April 2023, the Company made approximately $59,780.85 in payroll payments ostensibly for Former Employee-3, which, after tax and other withholdings, was paid to the SABESS Bank Account.

SABESS Inflates Her Bonus

31.     From my review of documents provided by the Company, I know that management authorized NIRVANI SABESS, the defendant, to receive a $12,850 bonus for her performance in 2022.

32.     From my interview of the Subordinate, I know that:

a.      The Subordinate was in charge of inputting 2022 bonuses for all employees into the Payroll System, after having received a spreadsheet from the Chief Financial Officer of the Company listing out employee bonuses.

b.      In or about March 2022, the Subordinate recalls inputting the bonus of NIRVANI SABESS, the defendant, as $12,850.

c.      After the Subordinate finished inputting all of the bonuses, she downloaded a digital copy of the inputs from the Payroll System. That digital copy, which I have reviewed, shows that the Subordinate accurately inputted the bonus of SABESS as $12,850.

d.      The Subordinate then told SABESS that she had completed inputting the bonuses. SABESS was ultimately responsible for finalizing the bonuses in the Payroll System.

e.      After the bonuses were finalized, the Subordinate received a call from the Company's controller, who had noticed that the total amount of bonuses paid out to employees was higher than what management had authorized. The Controller later discovered that SABESS had received a $27,000 bonus, not the $12,850 authorized.

f.      The Subordinate then confronted SABESS who acknowledged she had received a higher bonus than authorized.

33.     From my review of documents provided by the Company, I know that the additional bonus payment to SABESS was reverted to the Company.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of NIRVANI SABESS, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

          s/ Jeremy Rosenman /otw
JEREMY ROSENMAN
Special Agent
U.S. Attorney's Office for the Southern District of New York

Sworn to me through the transmission of this Complaint by reliable electronic means (telephone), this 27th day of April, 2023.

_____
THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York